In the Matter of an Application by MARY E. BLACK, Appellant, to Compel an Account of the Estate of MICHAEL J. LAFFEY, Deceased, and to Direct the Deceased Administrator's Legal Representatives to Turn over to Petitioner the Assets of Said Estate.

JOSEPHINE GOLDEN, Respondent.

First Department, March 19, 1926.

Executors and administrators — proceeding to compel accounting by legal representatives of deceased administratrix — deceased administratrix was appointed on claim that she was common-law wife of intestate — intestate boarded with deceased administratrix for many years — evidence shows that deceased administratrix was not common-law wife of intestate.

In proceedings to compel the legal representatives of a deceased administratrix to account and to turn over to the administratrix subsequently appointed, the property and assets of the estate, in which it appears that the deceased administratrix was appointed as administratrix on a claim that she was the common-law wife of the intestate, the evidence fails to establish that the deceased administratrix was the common-law wife of the intestate, since it appears that while there is testimony to the effect that both the intestate and the deceased administratrix stated that they were man and wife and occupied the same room, still, on the other hand, all the documentary evidence consisting of written applications by the deceased administratrix for electric light and gas service, a contract for electric wiring, notice of death prepared by the deceased administratrix, telegrams sent by her, and an application made to procure the payment of life insurance on a policy on the life of the intestate show that at no time after the alleged common-law marriage did the deceased administratrix regard herself as the wife of the intestate, for she did not sign any of said documents as the wife of the intestate, and since it further appears that after the death of the intestate she told the police officers and others that the intestate was unmarried and at no time claimed to be his widow until she applied for letters of administration.

APPEAL by the petitioner, Mary E. Black, from a decree of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 2d day of September, 1925, which decree, among other things, adjudged that Mary Sullivan was the lawful wife of Michael J. Laffey, now deceased; also from an order

entered in the office of said Surrogate's Court on the 16th day of May, 1925, directing an accounting, and also, as stated in the notice of appeal, an appeal from a bill of costs taxed in the proceeding on the 1st day of September, 1925, and entered in the office of said Surrogate's Court on the 2d day of September, 1925.

*Owen E. Reilly,* for the appellant.

*Joseph E. Cavanaugh,* for the respondent.

DOWLING, J. Michael J. Laffey died a resident of New York county on February 12, 1925. On or about February 19, 1925, Mary Sullivan Laffey filed a petition in the Surrogate's Court, New York county, wherein she alleged she had been the common-law wife and was the widow of Michael J. Laffey, deceased, and a decree of the Surrogate's Court was made and entered on the 20th day of February, 1925, granting to her letters of administration upon the estate of Michael J. Laffey, deceased. Mary Sullivan Laffey died on or about the 25th day of March, 1925, or within a period of five weeks after her appointment as administratrix. Mary E. Black, a niece of Michael J. Laffey, deceased, and the appellant herein, on or about the 19th day of March, 1925, filed a verified petition in the Surrogate's Court, New York county, praying that letters of administration upon the estate of Michael J. Laffey be awarded to her, and letters of administration were thereafter and on the 20th day of March, 1925, awarded to her. After the death of Mary Sullivan Laffey on March 25, 1925, letters of administration upon her estate were granted by the Surrogate's Court of the county of New York to Josephine Golden, the respondent herein, on the 8th day of April, 1925. On or about April 23, 1925, Mary E. Black, the appellant, presented her petition to the Surrogate's Court, New York county, wherein she alleged that Mary Sullivan Laffey had falsely and fraudulently represented that she was the widow of Michael J. Laffey, deceased, and praying for a citation to show cause why the respondent herein should not render and have her account judicially settled as such administratrix of Mary Sullivan Laffey, deceased, as administratrix of Michael J. Laffey, deceased, and why respondent should not turn over to the petitioner herein the assets of the estate of Michael J. Laffey, deceased. On or about the 15th day of May, 1925, an order was made directing the respondent to file her account herein. On May 23, 1925, the respondent filed her account, which alleged among other things that Mary Sullivan Laffey was the common-law wife of Michael J. Laffey, deceased. To this account the petitioner filed objections which were brought on for a hearing and testimony was taken.

The sole issue involved in this appeal is whether the testimony

establishes that Mary Sullivan Laffey, now deceased, was the widow of Michael J. Laffey, deceased.

The testimony offered in support of this claim may be summarized as follows: Mary Sullivan was the widow of one Sullivan, who died in May, 1922. She conducted a boarding house at 220 Eighth avenue during her husband's lifetime, and after his death conducted a similar establishment at 224 West Twenty-second street. She had been engaged in the boarding-house business for nineteen years. Michael J. Laffey had boarded with her about nineteen years, both during the lifetime of her husband Sullivan and after. There is some confusion in the testimony as to the two numbers 234 and 224 West Twenty-second street, but there is no doubt that Laffey had lived and died at 224 in the boarding house conducted there by Mrs. Sullivan.

Josephine Golden, Mary Sullivan's sister, testified that Laffey and her sister had been going out together before Sullivan's death; that Laffey called her sister " Mary " or " Madam," and her sister called him " Mickey; " that her sister told her she was married to Laffey, but Laffey never told her so. She testified that her sister and Laffey occupied a bedroom together after the sister moved to 224 West Twenty-second street. She had heard her sister called both Mrs. Laffey and Mrs. Sullivan by other people, but her sister told her she did not want any one to know she was married. This witness fixed the time of the marriage at least three years ago (which would make it in 1922).

Jennie Seaman, employed as a housekeeper by Mrs. Sullivan at 224 West Twenty-second street, testified that after they moved there Mrs. Sullivan told her she was about to be married, in the summer of 1923. She was then asked: " Q. Who was it told you? A. Mrs. Laffey told me she went down Sunday morning to the bungalow, and she said: I am going to get married, and take well care of the house, and when she came back on Monday morning she said: Don't call me any more Mrs. Sullivan; I am Mrs. Laffey now." Thereafter she said Mrs. Sullivan and Laffey referred to each other as husband and wife. They slept in the back parlor, which had two beds in it. According to this witness, though she claimed to know that Mrs. Sullivan and Laffey were married, when " everybody called her Mrs. Laffey," she (Mrs. Sullivan) used to say to the people: " Don't call me Mrs. Laffey; call me Mrs. Sullivan; " and this same witness testified that " she [Mrs. Sullivan] did not want anybody to know they were married." She admitted that at Laffey's funeral people called her Mrs. Sullivan and she made no protest against it.

Helen O'Brien had known Mrs. Sullivan four years. She testified

that both the latter and Laffey told her they were married. She fixed the time as August, 1923. She was asked: " Q. Tell just what Mr. Laffey said to you and what Mrs. Laffey said to you at the time you have referred to? A. We didn't know anything about it. They got married secretly, and she told us she was Mrs. Laffey, and he also shook hands with us and we congratulated him. Q. Whom did you mean by ' us ' when you say he shook hands with us? Who was there? A. The people that was in the room. I didn't know who they were. They were not tenants in the house." She testified that she had been in the back parlor often when Mrs. Sullivan and Laffey were there, and that there were two beds in this room. After they were married, Mrs. Sullivan, she said, was always known as Mrs. Laffey.

Anna Wilson had known both Mrs. Sullivan and Laffey for ten years. She said that at Oakland Heights, Staten Island, in the summer of 1923, she was visiting them there for the day. She was asked: " Q. Will you please tell just what was said and by whom it was said and whether Mr. and Mrs. Laffey were present about this marriage? A. Mrs. Laffey told me that she was just married shortly to Mr. Laffey and that he was down bathing and he came in the meantime, and he heard her telling me that they were married, but she did not want her sisters to know it. Q. Was he present there at the time she said that? A. Yes, he came from bathing."

She said that Mrs. Sullivan told her on another occasion in the presence of Laffey that they were married, and heard her tell others so in his presence.

Jennie McCarty, a former housekeeper for Mrs. Sullivan, testified that about Christmas, 1923, Mrs. Sullivan told her she was married to Laffey, and Laffey told her he was married; that he was getting old and wanted some one to take care of him in his old days. This witness swore she saw them in bed together, and she herself slept in the other bed in the same room.

Margaret M. Moriarity had known Michael J. Laffey and Mrs. Sullivan for about fifteen years. She visited them at 234 West Twenty-second street, and Laffey told her he was married to Mrs. Sullivan, saying: " Me and the old lady got married." This took place on an occasion when Laffey called on her and asked her to come down with him to the house as his wife was dying. On the following day she saw the two in bed together. She never asked Mrs. Sullivan or Laffey whether they were married by priest or minister. This witness deposited in her own bank account a check for $1,707.89 drawn by Mrs. Sullivan against her account as administratrix of the Laffey estate.

Julia Welch had known Mrs. Sullivan and Laffey for ten years.

In the summer of 1923 Laffey told her he was married, and not to call his wife Mrs. Sullivan any more, that her name was Mrs. Laffey. This was in the presence of Mrs. Sullivan. She saw them in bed together in the back parlor of 234 West Twenty-second street shortly before Laffey died.

Barclay Farley testified that he had known Laffey for fifteen years, and that about a year and a half before the trial (June, 1925) Laffey said: " I am married now to Mrs. Sullivan."

Alice Boyle had known Laffey three years, and in the summer of 1923 he told her he was married to Mrs. Sullivan. She remembered a time when Laffey said it would kill him if his wife died. She was then sick in bed, and Laffey had his bed moved up against hers.

Thomas McDonald, a chauffeur, knew Laffey as " boss of that furnished room house " at 234 West Twenty-second street; he had conversations with Laffey, and Mrs. Sullivan and Laffey referred to each other as husband and wife. He went with them to Oakland Heights, Staten Island, and lived with them four months there; during that time Laffey and Mrs. Sullivan occupied one bedroom. He said both Mrs. Sullivan and Laffey had paid him at different times, and he had seen them lying in bed together.

On the other hand, the testimony is not only persuasive but overwhelming that no common-law marriage ever existed between Laffey and Mrs. Sullivan.

Dr. Girard L. Moench, the attending physician to Laffey, testified that he called at 234 West Twenty-second street on February 12, 1925, and found Laffey dead there. He died of chronic heart disease. Dr. Moench testified that Mrs. Sullivan identified the body as that of Michael Laffey. He was then interrogated: " Q. You had a conversation with Mrs. Sullivan there, did you not? A. Yes. Q. Did she identify the body? A. Yes. Q. Whom did she state the body was? A. Laffey. Q. Michael Laffey? A. Michael Laffey, yes. Q. Did you ask her whether he was married or single? A. Yes. Q. What did she say? A. Single. Q. He was a single man? A. That is what she told me. Q. Did you ask her what age he was? A. Yes. Q. Did she give you the age? A. She told me about 55. Q. Did you ask her what relation she was to the dead man? A. Yes. Q. What did she say? A. Friend. Q. You made a record of that for the Department of Health? A. Yes, I have it here."

James F. Kenny, a police officer, testified that on the morning of February 12, 1925, he visited the premises 224 West Twenty-second street. He then testified: " Q. Whom did you talk with? A. A Mrs. Sullivan. Q. Did you find a dead body there? A. I did.

* * * Q. Whom did she say it was? A. She said it was a roomer. Q. Did she give you his name as Michael Laffey? A. Michael Laffey. Q. Did she state when he had died? A. Not just then; about five minutes before that. Q. Did you ask her what relation she was to him? A. I did. She said she was his friend. Q. Did you ask her whether he was married or single? A. I did. Q. What did she say? A. Single."

Richard J. Delaney, the undertaker who buried Laffey, testified that he was acquainted with Mrs. Sullivan. He asked her who the " next of kin " were, " or anybody like that, nephews and nieces." She gave the name of Mary Laffey, a niece, as his nearest relation. He addressed her as Mrs. Sullivan, and she said she was responsible for the bill in that name. At her suggestion, he prepared the following death notice for insertion in the New York *World* of Saturday, February 14, 1925:

" Laffey.— Suddenly, Feb. 12, Michael J., beloved brother of the late John, Peter and Patrick Laffey; native of County Mayo, Ireland.

" Funeral from his late residence, 224 West 22d St., Monday, Feb. 16; thence to Church of St. Francis Xavier, where a solemn requium mass will be celebrated at 10 A. M. Interment Calvary Cemetery."

It will be noted that there was here no reference to his having left a widow. The first time Mrs. Sullivan ever claimed to Delaney to be Laffey's widow was twelve days after his death, when Delaney and she went to the office of the Prudential Life Insurance Company, where she had signed her name as a cousin of Laffey's. She then said she was his wife but did not want anybody to know anything about it and wanted to keep it to herself, which of course was inconsistent with the testimony of witnesses who testified to declarations made by her as to her marriage. It appeared that Laffey was buried in his brother's grave.

George Robertson, a chauffeur employed by Mrs. Sullivan while she was living at 224 West Twenty-second street, testified that she had an automobile which was in the name of John Reilly, her nephew. She was always called by everybody Mrs. Sullivan, and neither she nor Laffey ever objected to it. He himself so addressed her in December, 1924, in Laffey's presence, and neither objected to it. He was present at the wake for five hours and heard her called Mrs. Sullivan by every one.

Benjamin Trigg, employed by the Consolidated Gas Company, testified that on June 5, 1924, Mrs. Mary Sullivan in that name paid a deposit of fifty dollars as security for payment of bills

9

rendered for gas supplied at 224 West Twenty-second street, and on December 1, 1924, she signed an application for the supplying of gas in 224 West Twenty-second street, the whole house being occupied for furnished rooms, and such signature by her was (Mrs.) Mary Sullivan. This written application was received in evidence.

Thomas F. Grady, superintendent of the branch office of the Prudential Insurance Company at 320 Seventh avenue, testified that on April 8, 1925, Mrs. Sullivan made written proof of claim with said company to collect the amount due on two policies on the life of Michael J. Laffey. As part of that application for payment there is a " claimant's certificate." Therein she gave her name as Mary Sullivan, and answered the question " relationship of claimant to deceased " by saying " friend." There are further questions in said blank: " 15. Was deceased married? " to which she answered " No; " and " 16. If deceased was married, is widow or widower alive? " to which no answer was made. This claimant's certificate was signed " Mary Sullivan." This application for payment was marked " Wid." and she finally was paid the money as administratrix of Michael Laffey's estate.

Emil R. Fox was the owner of the bungalow at Oakland Beach, Staten Island, in which Mrs. Sullivan lived for three years. She always paid the rent, and was never known by any other name than Sullivan. He saw Laffey around, but was never told they were married.

George Robsemann, also living at Oakland Beach, engaged in the painting business, visited the bungalow a couple of times a season, six or seven times the last summer she was there. He knew her only as Mrs. Sullivan, and knew Laffey as a boarder with her. He never was told by either of them that they were married.

Joseph McCabe, a member of the fire department, had known Mrs. Sullivan about two years. She introduced him to Laffey as " the longest boarder she had." She was known to him only as Mrs. Sullivan, and neither she nor Laffey had ever told him they were married.

Frederick Krause, an electrical contractor, did work in the electric wiring of the house at 224 West Twenty-second street, under a written contract signed by Mary Sullivan in that name.

Margaret Connors, living in the adjoining house 226 West Twenty-second street, testified that in June, 1924, there was some trouble about a fence in the back yard; that she called in " Mr. Sullivan," thinking that was his name, and he said his name was Laffey; that he had boarded there for sixteen years and a great

many who did not know him called him Sullivan. She knew Mrs. Sullivan only by that name.

John Fletcher, a member of the police department, testified that on February 14, 1925, " I was told by the Lieutenant to go down to 224 West 22nd Street and get the effects of Michael Laffey, deceased, who died in a furnished room at that address. I went there and rang the basement bell. Someone, a woman, sitting inside the door, opened the door and I asked if Michael Laffey lived there. She called up the stairs and called Mrs. Sullivan. Mrs. Sullivan came down and wanted to know what I wanted, and I told her and went upstairs. There was four women, a man and Mrs. Sullivan in that room. I stated my business. She opened the closet and started to give me the clothes. I said: I will get them out. She said: Some of them are mine. And I said: I don't want yours; I gathered them together. I said: Is this Laffey's room? She said: No. She pointed to a room and said: That is his room and this is my room. Q. She said that was her room? · A. Yes. Q. Did you ask her whether she was married or single? A. I asked Mrs. Sullivan if that was her husband Sullivan? And she said 'no. Q. Did she say whether he was a roomer there or not? A. She said he lived there for years; lived there about twenty years. Q. Did she say whether he was a roomer or boarder? A. I didn't ask that. She said he lived there for about twenty years boarding with her."

The officer had called there to get the decedent's effects for the public administrator, and they were turned over to him without objection by Mrs. Sullivan. He testified: " Q. Did Mrs. Sullivan make any objection that they were her property or were her husband's clothing or effects? A. No. One piece of jewelry was missing and she said he intended I should have it, and I gave Mrs. Sullivan to understand at that time, if it is yours, it is yours, and if it is Laffey's it is Laffey's and I want it. She spoke of a life insurance policy that she had sent to the insurance company."

Frank E. Lane, a representative of the Edison Electric Light Company, produced a contract signed by Mary Sullivan in that name on May 9, 1924, for electric light service at 224 West Twenty-second street, and also bills rendered to, and paid by, her from June 5, 1924, continuously.

Katherine J. Laffey, a sister-in-law of Michael J. Laffey, never heard that he was married until two or three weeks after he was dead. She testified she was at the wake and said she saw Mrs. Sullivan there. She was then asked: " Q. While you were there did the police (sic) come in? A. Yes, the priest came in, and he sat down, and he got up and he asked Mrs. Sullivan how long was she in

this house. Six months she said with this man. She said he was a single man. Mrs. Sullivan said to the priest he was a boarder for so long, and I don't know what the conversation was. I walked out."

Two telegrams were sent after Laffey's death, prepared by the witness Thomas McDonald at the request of Mrs. Sullivan. When asked, " Did you sign Mrs. Sullivan's name? " he answered: " I did not sign it. She told me to keep quiet and don't call her Mrs. Laffey. She always went under Mrs. Sullivan." The telegrams were as follows:

" WESTERN UNION TELEGRAM
" Received at 267 Eighth Avenue, N. Y.
                    " 1925 May 29 PM 12 58
" NA 113 14 8 Extra Rush Duplicate Wk
         " New York NY Feb 12 442P
" MRS BLACK,
         " 111 Washington St Mt Vernon NY.
   " Uncle Mike is dead come soon.
                    " MRS SULLIVAN 224 West 22 St."

" WESTERN UNION TELEGRAM
" Received at 267 Eighth Avenue, N. Y.
" NA111 14 8 Extra Rush Wk New York N Y Feb 12 442P
" MAY LAFFEY.
         " 377 13 St Brooklyn N Y.
   " Uncle Mike is dead come soon.
                    " MRS SULLIVAN 224 West 22 St."

I think it is clearly established by the evidence that Mary Sullivan never was the wife of Michael Laffey. There is no evidence from which a ceremonial marriage could be proved or even surmised. The evidence preponderates that she never was his common-law wife. Not only this, but every shred of written evidence in the case contradicts her claim to be such, all of it over her own signature. The application for service to the electric light and gas company, the contract for electric wiring in her house, are signed by her as Mrs. Mary Sullivan. The notice of death contains no reference to the fact that he left a widow, the customary information given in such an advertisement. The telegrams informing his relatives of his death are signed Mrs. Sullivan, and refer to decedent as " Uncle Mike," his relationship to them, and suggesting no relationship to her. Finally she endeavors to obtain his insurance money as a " friend," still signing as Mrs. Sullivan on February 18, 1925; and it is only when she finds she cannot collect the amount of the policies in that relationship that on February nineteenth she files her petition to be appointed adminis-

tratrix of Laffey's estate as his " common-law " wife. I am of the opinion that such a claim was an afterthought, caused by her realization that she could only obtain Laffey's property by claiming to be his wife — in part the same property which she had allowed to be taken from her custody by a police officer and to be turned over to the public administrator without any claim whatever to it on her part.

The order brought up for review should be modified by including therein the direction stricken out by the surrogate, that Josephine Golden turn over unto Mary E. Black, the petitioner herein, as administratrix of Michael J. Laffey, deceased, any and all assets of the estate of the decedent; and as so modified affirmed.

The decree appealed from should be reversed in so far as it dismisses the objections of the petitioner, and said objections sustained, with costs to appellant in this court and in the court below; and also in so far as it adjudged that " the proof submitted in this proceeding before the surrogate upon the question of the marriage of Mary Sullivan to Michael J. Laffey establishes the validity of such marriage of Mary Sullivan to Michael J. Laffey and that Mary Sullivan Laffey was the lawful widow of the decedent; " and on the contrary it should be found that Mary Sullivan was never married to Michael Laffey, and never his lawful widow; and the proceeding remitted to the Surrogate's Court for action in accordance with this opinion.

CLARKE, P. J., FINCH, McAVOY and MARTIN, JJ., concur.

Order modified as indicated in opinion and as so modified affirmed; decree reversed so far as indicated in opinion and exceptions sustained, with costs to appellant in this court and in the court below, and the proceeding remitted to the surrogate for further action in accordance with the opinion.